May it please the Court, my name is Barry Sullivan of Stevenson, Acquisto & Coleman, representing St. Vincent Medical Center in this case. Mr. Sullivan? Did the Court have and received the August 13, 2014 additional letter that opposing counsel sent? I just wanted to find out if the Court has. It hasn't made its way to my file. That doesn't mean it's not here. Be that as it may, Your Honor, I just want to commend opposing counsel because there's a case in there that they cited. I don't want to talk for opposing counsel, but briefly, we cited a case, an out-of-jurisdiction case, the Baylor University case in Texas. It's a district court case. We cited it for the proposition that this sort of contractual arrangement… This was in your blue brief? The reply brief, yes, Your Honor. All right. The Baylor University case sets out at length the reasoning that we wish to have the Court and we urge the Court to apply in this case, which is to find a unified contractual arrangement. The Baylor case, naturally enough, caused concern for opposing counsel, such that this letter briefed on August 13 was sent. And I just wish to draw the Court's attention to one of the cases that opposing counsel cited in that letter brief, which I assume will eventually find its way to you. And that was the Lubbock Heart Hospital v. Olympus Managed Healthcare case, which is… It wasn't reported in the Southwest Reporter, but it was a 2011 Westlaw 557-4751. Now, this is a case you're bringing our attention to for the first time right now. I am, Your Honor, but I'm taking it because the opposing counsel raised it in the letter. Very well. Before you leave the chambers of this courtroom, please give the deputy clerk a copy of that citation in triplicate and also serve your opposing counsel. Very well. I'm sorry, maybe I'm unclear. The case that you're referring to is cited in their letter, yes? Absolutely, Your Honor. It's cited in their letter? It was a letter on Menapfel Stationery, dated August 13, that they submitted. Yeah, we have it. Well, I have it. I'm sorry, it just didn't get to my chambers, but that's all right. Please, go right ahead. As long as the case is in front of us, then we have no problem. What case is it that's in the letter? Because there are several that are in there. Which one are you- It was the Lubbock Park Hospital versus Olympus Managed Health Care case, Your Honor. I was actually quite pleased that they cited that case because I think that the case stands for the exact proposition that we're urging on the court. Even though, in that case, the result for the health care provider was negative, the health care provider did not win that case. But otherwise, the analytical engine that the court employed in that case was perfectly consistent with what we're urging the court to employ in this case. The problem is, neither of those cases is from within this circuit. You're absolutely right, Your Honor. Counsel, let's get to the merits here. Where is the contractual relationship between St. Vincent and MEGA? I've been looking for it, and I can't find it. Your Honor, it's when you look at the whole set of documents put together for hospital network arrangements. Well, I look for a third-party beneficiary status that might have shown up in the documents between MEGA and the health system and between St. Vincent and the health system, and it's not there. Or at least I couldn't find it. It's only not there. It is expressly disclaimed, is it not? It is. There is, in both contracts, expressed disclaimer of third-party beneficiary. Again, that's not the theory upon which we're providing. But why would one disclaim third-party beneficiary status if the three parties viewed this as one overall agreement by which they were mutually bound? Then this language would be pointless, in fact, contrary to their intent. Exactly, Your Honor. But the language is there, so to give it meaning, we have to reject your argument, don't we? Your Honor, I would say that in order to harmonize all the provisions and make them applicable, including the anti-third-party beneficiary clause, the court would look to the intent of the parties. And the intent of the parties was that there were third-party beneficiaries to be benefited, notwithstanding the anti-third-party beneficiary clause. For example, most obviously, on their contract they expected their beneficiaries. So just to press the point, so your argument is that notwithstanding that this language could not be clearer, it's entitled no third-party rights, that we should conclude that it is meaningless, the parties included it wrongfully and it was not their intent to honor it. Not at all, Your Honor, that is not what I'm saying. Okay, then I'm having trouble with your argument, or at least understanding it. We're first parties. The third-party beneficiary clause would not apply to a first party in the contract. The intent of the parties with multiple instruments would constitute the overall arrangement, much like in the harm versus fracture case. In other words, we are not bound by the anti-third-party beneficiary clause because most specifically, we are not a third-party beneficiary. Technically speaking, we are a first party in the contract. Therefore, that part of the- In the contract between Mega and St. Vincent, you are certainly not on the face of the document a party, are you? That's correct, not on the face of the document, but most certainly in the intent of the parties, there was going to be more instruments to be bound up- So when the contract says, that contract, the parties to this contract are Mega and St. Vincent, and they don't say anyone else is a party, and then they say, and no third party has any rights, you say that notwithstanding all of that, you're really a first party to that agreement. You're right, Your Honor, because the point being is that the intent of the parties was that we were not an incidental or non-incidental third-party beneficiary of the contract. We were a contracting party with them because of the overall body of documents. Your Honor, I think what we're doing here is we're getting caught up in the difference between the word contract versus the word instrument. In this instrument, you're right, we were not named in that instrument. I fully accept that, but the point is that when you look at the instrument and you look at its counterpart on the hospital side, which similarly did not name Mega Life by name, nor would it, because the overall thrust of these arrangements is to reduce paperwork. The whole point of the hospital network arrangement is to reduce the number of contracts by using a middle party, First Health. But you wouldn't have to have a lot of paper to just include one paragraph that would incorporate the concept of the preferred provider organization and all of the parties who are contractually obligated under that arrangement. Well, yes, Your Honor. You could say that in a general space, but let's take an example just from this courthouse. Within five miles of this courthouse, five to seven miles, there's at least five major hospitals, and there's lots and lots of large employers. In order to successfully memorialize that transaction, we would have to have each major health plan, large employers, say like Walt Disney or Nestle in Glendale or Parsons Construction here in Pasadena, have to individually contract with each of the five major hospitals just in this five-mile, seven-mile radius. That would mean 25 total contracts would have to be generated, drawn up, and maintained over the lifespan, and that's just within this area. I thought the reason there were so many hospitals in this area was that after oral argument, they were necessary for the lawyers. I might stop by. Let me ask you two concerns. Number one, why didn't you simply take an assignment from the patient? The patient is the insured, has rights against MAGA, regardless of this health benefit program in the middle. That's the first question. Second question, what is it that the hospital expects to gain? Assuming we find that there is a contractual relationship, what rights would the hospital have which would exceed the rights that the patient had against the insured? I'm glad you brought that up, Your Honor, because about five years ago, that question was asked to me in a case before this court, a different courtroom. I believe it was by Judge Fernandez who asked me, why are you suing not on an assignment of benefits theory, but on a breach of contract theory through the network arrangement? And it was for a very specific reason. We didn't want to be bound by the provisions and hoops that had to be hurdled by the ERISA plan that was at issue. Because that was one of the provisions, for example, that we would have to abide by in the assignment of benefits theory. We sued on a completely different basis. Well, is there some statutory right out there that I'm unaware of that gives you a right to sue MAGA? I don't get it. It's a contractual right, Your Honor, under the common law, Your Honor. I urge the court to look at the Cedars-Sinai case and the Marin General case. I don't have the citations off the top of my head. Well, let me ask you this. Assuming we find this contractual relationship, what recovery would the hospital be able to have against MAGA that the patient would not have? The patient would not have the right to sue us directly, Your Honor, for anything. No, I'm talking about recovery. What is it you expect to get from MAGA? The patient couldn't return or couldn't obtain anything from us. What we would be able to obtain that the patient could not obtain was the rights under our contractual relationship, including the right to be paid according to the contract rights that we have, especially the rates. Notwithstanding the fact that MAGA denies coverage for an exclusion? Your Honor, that's in their contract between them and their beneficiary, an insurance policy between them and their beneficiary. And they have the perfect right to complain about that, that somehow they may be wronged by the fact that their policyholder may have relied on their application. But we are not concerned about what the relationship is between them and their policyholder. What we're concerned about is the hospital network arrangement which they entered into with us through the First Health Intermediary. And because of that, we have the right to obtain 70% of our billed charges for these two patients who are at issue. We delivered, to put it another way, Your Honor, the whole point of this hospital network arrangement is to facilitate the delivery of health care to individuals. The individuals came in holding a First Health card. We gave them the treatment based on that because we had the, or at least we thought we had, the contract with First Health, who then had the other contracts, the payor contracts, with all the other payors out there. We gave the care, we delivered for one of them over a quarter million dollars of care, and we expected 70% of that. We have been paid zero on that basis. Now, the question becomes, what is a hospital to do? Are we then to look at the patient and say, you know, based on our last experience- Typically, hospitals go right to the insurer before the operation is performed and say, do you agree to cover, yes or no? Absolutely. And usually, that's resolved right then and there. We think so, Your Honor. Did that happen here? Yes, it did. And the insurer said they would be fully responsible, notwithstanding the exclusion? They said they had an exclusion in their telephone conversation, Your Honor, but once we put scalp to skin, we perfected our rights under our hospital network contract. And they don't have the right to then say that since we fully performed, they have a right to suddenly say that under our contract with our beneficiary, we now have superior rights to you even though we promised we would pay you. Your Honor, I would like to reserve- You may do so. You're down to about a minute and a half. Thank you, Counsel. We'll hear from the hospital. Excuse me, from Megalife. Good morning, Your Honors. May it please the Court, my name is Margaret Levy, and I represent the appellee, the Megalife Health Insurance Company. As Judge O'Scanlan pointed out in questioning counsel for appellant, there can be no greater right that the hospital has to recover against Megalife than its own patients have. In other words, it is undisputed that the coverage that Megalife provided to its insureds simply did not cover the services that were provided at St. Vincent Medical Center. Do I understand it from the question that Judge O'Scanlan just asked and was sort of answered, that when the hospital called the Megalife, Megalife said we don't cover? Or did you say you do cover? What Megalife said is this is not a guarantee of payment. There may be exclusions and limitations that apply, co-payments, deductibles, and they specifically mentioned the pre-existing condition. So they didn't give a, what, they gave an ambiguous response? I would disagree, Your Honor, with that characterization. They gave a response that said this person is insured, their premiums are paid, they have a policy with us, but we cannot guarantee payment because we don't know what services are going to be rendered and we don't know what their medical history is. So it says specifically this is not a guarantee of payment. There may be exclusions and limitations that apply. Specifically mentioned the pre-existing condition provision as well as co-payments and deductibles. So at no time was any promise to pay made. And in particular, there's no contractual theory under which Megalife can be compelled to pay for services that it did not contract to pay for with its own insurers. Both the contracts between Megalife and First Health and the contract between St. Vincent and First Health make it very clear that Megalife has the right to determine benefits and what benefits are payable. And so those contracts cannot go beyond that and create coverage where no coverage exists. In particular, I would draw the court's attention to paragraph 5.2 of the Mega First Health contract at tab 9, page 119 of the excerpts of record that states Payor retains full responsibility for all final determinations regarding the obligation of Payor or any other person to pay for or otherwise provide benefits. In addition, the contract between Megalife and First Health states specifically in paragraph 3.12 at excerpts of record tab 9, page 128, the final determination of compensability shall be made at the time of claim adjudication. So it's not made at the time of that phone call that comes in when the patient is being admitted. Judge O'Scanlan also pointed out, why didn't they get an assignment of benefits? There was an assignment of benefits, Your Honor, and that is found in the record at excerpts of record 9, pages 154 and 155. Each patient that was admitted signed as part of their conditions of admissions assignment of any insurance benefits to which they were entitled. Those would go to the hospital to the extent that they were payable, but acknowledged that they were financially responsible for any amounts not covered by insurance. So basically, again, both contracts, as the court pointed out, say specifically there's no third-party beneficiary arrangement here. It doesn't say no third-party beneficiary except for St. Vincent Hospital. It says no third-party beneficiary. Also, both of the contracts contain integration clauses that say this is all there is, nothing else applies here, and in order for there to be additional amendments, they must be in writings signed by the parties. Appellant would have this court ignore the contract between MEGA and its insured and also ignore the specific language within the four corners of those agreements. Unless the court has any further questions, we would submit that the judgment of the district court should be affirmed in all respects. Counsel, my law clerk brought to my attention a case called Scripps Health in which apparently we approved an arbitration which, in effect, provided the result that counsel was asking for here. Apparently it went to arbitration. The question was in front of us did the arbitrator exceed the terms of the arbitration agreement, and I guess we held that it was within it, but apparently it had a different result. Are you familiar with that case? I'm not familiar with that case, Your Honor. We'd be happy to submit supplemental briefing if the case. Well, it's not directly involved, but I just wondered if you had a thought. But we would also submit, Your Honor, that Illinois law applies under the terms of the contract between MEGA Life and First Health, and we have submitted in the letter dated August 13th of this year some Illinois cases that are directly on point and involve the very First Health, the same contracting party here. They say that there are two separate contracts. They do not treat them as a single contract. Very well. Thank you, Counsel. No questions?  Thank you, Your Honor. Your Honor, I wish to correct a misapprehension here. We are not suing under the theory that we may have had through the assignment of benefits from the patient. I urge the Court to look at that. I'm not at all surprised you'd be barred by the exclusion. Well, you're absolutely right, Your Honor. This is not new ground that this Court has plowed here because I have personally argued the case of Cedars-Sinai and the Marin General cases, whose specific citations I don't have, but where the Court asked me, well, how can we do this given that you have an assignment of benefits? And I said to the Court then, and I say to the Court now. Well, this is just another string to your bow, and that's what you're arguing, and I can understand that. Exactly, Your Honor.  And I didn't choose to shoot the assignment of benefits arrow in this instance. So I appreciate the exclusion, but I'm not shooting that arrow here. I'm shooting a breach of contract common law arrow against our opponents. Your Honor, I had a question. I draw the Court's attention to the record 9-141. We did tell Megalife that we were going to be working on this person's aortic valve stenosis. So they knew when we called them up, they knew that we were going to perform some major heart surgery. And they used, in part, information that they gathered after this person was treated from our own medical records to then say this person had a pre-existing condition. But they put you on notice that there were exclusions and deductibles and all of that. You're right, Your Honor. And if we were shooting that assignment of benefits, I would say that that poses a major obstacle, but we're not going that route. I'd say that my time is up. Thank you, Counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: Rakoff, O'SCANNLAIN, RAWLINSON